Mr. Justice Sutton
delivered the opinion of the Court.
This is a workmen’s compensation death action. The parties will be referred to as follows: Plaintiffs in Error, Electric Mutual Liability Insurance Company and General Electric Company, will be designated as carrier and employer, respectively; defendants in error, Industrial Commission of Colorado and Veronica Evans and Kimberly Jo Evans, will be designated as the Commission and Claimants, respectively.
The writ of error challenges a ruling of the district court of the City and County of Denver affirming the Commission’s order in favor of the Claimants which in *493 turn had sustained the findings and judgment of the Commission’s referee awarding death benefits.
Before turning to the three points urged for reversal, a brief recital of material portions of the record will afford the background for properly understanding the matters in dispute.
Decedent, Robert W. Evans, a technician for the General Electric Company in Denver, was killed in a one-car accident at 8:00 p.m. on October 3, 1961, on Highway No. 73, one mile from his home in Evergreen, Colorado. He had been assigned by his employer on that day to contact engineers at Colorado Springs in connection with the installation of television sets at the Broadmoor Hotel. He had had prior assignments of a similar nature and in order to fulfill this particular assignment had to use his personal automobile.
The claimant widow testified that her husband left home early on the morning of October 3rd and that “he was going to the Broadmoor, Colorado Springs.” Additional testimony disclosed that the decedent kept a diary book “when he didn’t use the Company car which shows the mileage and the expenses for the day;”. In decedent’s handwriting in this diary under date of October 3rd appeared the following: “Colo. Springs (Broadmoor) Park .30; Jon Nonko lunch 2.60; Auto 156 miles L.D. Major Cent. 2.80.” It further appeared that the 156 miles is the distance from Evans’ home to Colorado Springs and back and that Jon Nonko is a television engineer and a service dealer in Colorado Springs.
A witness, Mr. A. I. Schoemaker of General Electric, testified that the Company had paid the deceased’s mileage expense for October 3rd “on his manager’s statement that he had been to Colorado Springs” and that “the Company was sufficiently satisfied that he had been there (Colorado Springs) to pay his transportation and estimate what it was on that date;” and that he knew of no instance “where Mr. Evans was assigned to do a job and did not show up or did not go there.” One complaint *494 as to this particular type of evidence is that claimants offered no testimony of anyone who saw decedent in Colorado Springs and relied instead on circumstantial' evidence.
With respect to the accident, it should be observed that there was testimony from various witnesses from which the Commission could find that the accident was caused by some mechanical defect or malfunction of the car. Two witnesses heard a grinding sound and a snap like something breaking as decedent’s car passed their store a “flash” before the accident which happened a very short distance away; both these witnesses later saw what appeared to be transmission or brake fluid on the highway in front of their store which fluid was not there before the accident as well as tire skid marks attributable to the accident; another witness who towed decedent’s car, commented on the power steering mechanism being detached when he examined the car though it appears this may not have been due to the accident; and, a garage owner with seventeen years experience testified about the circumstances surrounding the tragedy. On the basis of his observation of the car following the accident it appears probable that the vehicle’s rear wheels had locked, due to a transmission failure.
There is uncontroverted evidence that at the time of decedent’s death his blood contained 0.195 per cent by weight of alcohol. One witness, Dr. Larry C. Kier, a well qualified professional bio-chemist with a Ph.D., testified at some length on the effect of such a blood-alcohol level.
We now turn to the first question, namely, was there proof that decedent was ever in the course of his employment on the day of his death?
 From what has already been recited this question must be answered in the affirmative. There is ample evidence to affirm the Commission’s finding to that effect. The fact that such evidence is circumstantial makes no difference. Industrial Comm. v. Havens, 136 Colo. 111, 314 P. (2d) 698 (1957). Besides, the inferences and con *495 elusions to be drawn from the evidence in compensation cases are for the Commission, not for the courts. Industrial Comm. v. Valdez, 101 Colo. 482, 74 P. (2d) 710 (1937). Further, it has been held that where an employee uses his own car, as here, to perform services for or at the direction of his employer he remains in the course of his employment until he returns home. O. P. Skaggs Company v. Nixon, 101 Colo. 203, 72 P. (2d) 1102 (1937). And, where there is evidence to support a finding, as here, the courts must affirm it. Morrison v. Clayton Coal Co., 116 Colo. 501, 503, 181 P. (2d) 1011 (1947).
The second question presented is: assuming decedent was at some point during the day in the course of his employment, did he leave or lose that status when he consumed enough alcoholic beverage to give him a blood-alcohol level of 0.195 per cent? This question must be answered in the negative.
The only effect that intoxication could have in this case would be to reduce his benefits by 50%; it had nothing to do with the question as to whether the employee sustained injuries arising out of and in the course of his employment.
The third question raised is whether, if decedent was in the course of his employment at the time of his death, the penalty as provided in C.R.S. ’53, 81-13-4 should be applied due to his alleged intoxication. This is the statute that reduces the amount of compensation by 50%, if applicable. We conclude that it has no application to this case because the Commission determined, from evidence properly before it, that the proximate cause of the accident was some sort of mechanical failure of decedent’s automobile. And, we have said we are bound by such a determination when supported by competent evidence as here. Therefore, whether Evans had been drinking, how much he consumed and what his blood-alcohol count was, are immaterial to this action since there is no evidence that this was a proximate *496 cause of the accident. Stearns-Roger Manufacturing Co., et al., v. Casteel, et al., 128 Colo. 289, 261 P. (2d) 228 (1953).
The judgment is affirmed.
Mr. Justice Hall dissents.